1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHERYL L. ROWE,

               Plaintiff,

    v.

MICHAEL ASTRUE, Commissioner of
Social Security Administration,

               Defendant.

CASE NO.    **C06-5436RBL**

REPORT AND
RECOMMENDATION

Noted for July 16, 2007

      This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court affirm the administration's final decision.

INTRODUCTION

      Plaintiff, Cheryl L. Rowe, filed an application for disability insurance benefits on July 16, 2002, (Tr. 13, 96-99) alleging an inability to work beginning November 17, 1999, due to vestibular dysfunction and possible benign paroxysmal positional vertigo (BPPV) variant (Tr. 13, 96). She previously filed an application for disability benefits on November 14, 2001, which was denied (Tr. 29). Since her current application was filed within one year of the initial denial, her first application has been re-opened by the administration (Tr. 29).

On March 29, 2004, a fully favorable decision was issued by the administrative law judge ("ALJ") based upon a finding that Plaintiff met the Listing for 12.07 of Appendix 1, Subpart P of 20 C.F.R. § 404 (Tr. 13, 27-30). This favorable decision was made on the record and without an oral hearing (Tr. 13, 27). Plaintiff appealed the decision to the Appeals Council arguing that the decision was not fully favorable because the decision was based on meeting Listing 12.07 rather than due to her physical impairment (Tr. 13, 44). The Appeals Council vacated the favorable decision and remanded the case to "afford the claimant an opportunity for an oral hearing, in accordance with 20 C.F.R. § 404.948," and to take any action necessary to complete the administrative record, and issue a new decision (Tr. 13, 45).

On November 18, 2005, a hearing was held  (Tr. 611-639). Testimony was taken from Plaintiff, Dr. Yarington, a  medical expert, Dr. Asher, a psychologist, and Dr. Bachelder-Stewart, a vocational expert. Similar to his earlier decision, the ALJ issued a decision granting Plaintiff's application, finding that although she had the physical capacity to work, her workday would be interrupted by her psychological symptoms to the degree that she could not perform sustained work activities in an ordinary work setting for 8 hours a day, 5 days a week (Tr. 17).  On May 31, 2006, the Appeals Council denied Plaintiff's request for review, making the ALJ's January 2006 decision the final decision of the Commissioner (Tr. 6-8).

Plaintiff now seeks judicial review of the favorable administrative decision granting her application for disability insurance benefits under Title II of the Social Security Act. See 42 U.S.C. §§ 401-33. Plaintiff disputes the ALJ's step two finding of somatoform disorder; that she retains the residual functional capacity (RFC) to perform medium level work; and that she is disabled due to her mental impairment. Additionally, she argues that her vestibular disorder equals the severity standard for Listing 2.07. Defendant counter-argues that the ALJ applied the proper legal standards and that the administrative findings and conclusions are properly supported by substantial evidence.

<u>DISCUSSION</u>

This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision.  <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  <u>Richardson v. Perales</u>, 402 U.S. 389,

1   401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a

2   preponderance.  <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); <u>Carr v. Sullivan</u>, 772

3   F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the

4   Court must uphold the Secretary's decision.  <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).

5   *A.  THE ALJ PROPERLY ASSESSED THE MEDICAL EVIDENCE*

6          The ALJ is entitled to resolve conflicts in the medical evidence.  <u>Sprague v. Bowen</u>, 812 F.2d 1226,

7   1230 (9th Cir. 1987).  He may not, however, substitute his own opinion for that of qualified medical

8   experts.  <u>Walden v. Schweiker</u>, 672 F.2d 835, 839 (11th Cir. 1982).  If a treating doctor's opinion is

9   contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific

10  and legitimate reasons" supported by substantial evidence in the record for doing so.  <u>Murray v. Heckler</u>,

11  722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute

12  substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating

13  physician."  <u>Lester v. Chater</u>, 81 F.3d 821, 831 (9th Cir. 1996).  In <u>Magallanes v. Bowen</u>, 881 F.2d 747,

14  751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of  a treating physician's opinion

15  because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied

16  on laboratory test results, contrary reports from examining physicians and on testimony from the claimant

17  that conflicted with the treating physician's opinion.

18         Here, plaintiff contends the ALJ improperly found a severe psychological impairment and the ALJ

19  should have found that her vestibular disorder equals the severity standard for Listing 2.07.  After

20  reviewing the matter, the undersigned does not find any error in the ALJ's review and assessment of the

21  medical evidence.

22         In August 1999, Plaintiff was diagnosed with temporal-mandibular joint disorder, with complaints

23  of headaches, earaches, jaw pain, and a painful click in the jaw (Tr. 14, 308-309).  A magnetic resonance

24  imaging (MRI) study in January 2000,  revealed normal results (Tr. 14, 412).   In March 2000, Plaintiff

25  saw Matthew Wong, M.D., for follow-up on complaints of dizziness with vertigo (Tr. 14, 315). Dr. Wong

26  diagnosed "initial vestibular neuronitis with some mild residual vestibular dysfunction uncompensated with

27  some left positional vertigo component, [and] no positive Hallpike testing" (Tr. 14, 315). Dr. Wong

28  recommended vestibular physical therapy and noted that:

1
2
3
> The present amount of disability and unable [sic] to work is more than what I would see
> with her amount of measurable vestibular dysfunction. Most patients with her measurable
> dysfunction, continually complain of some dizziness and offbalance sensation but not being
> unable to work. Therefore the possibility that this may be a non-vestibular cause of her
> dizziness with vertigo

4   (Tr. 315).  In April 2000, Plaintiff's otologic examination results with John M. Epley, M.D.,

5   were within normal limits except for stagger on her right side-step and some sway on sound evoked

6   destabilization (Tr. 275-276). At that time, Dr. Epley diagnosed  endolymphatic hydrops, BPPV

7   Canalithiasis, and BPPV variant (Tr. 276).

8        In January 2001, Plaintiff underwent vestibular testing by George A. Gates, M.D., director of the

9   Dizziness and Balance Center at the University of Washington (Tr. 339-369).  The electronystagmography

10  (ENG) results were within normal limits; there was no spontaneous or positional nystagmus; the

11  Dix-Hallpike tests were negative; there was no post head shake nystagmus (Tr. 344). The dynamic visual

12  acuity test revealed normal results (Tr. 345). The computerized dynamic posturography (CDP) revealed

13  normal postural control on all test conditions and normal motor control was exhibited (Tr. 346). Dr. Gates

14  noted that Plaintiff presented a long litany of symptomotology, accompanied by a 3-page typewritten

15  document describing minute details for her doctors (Tr. 397, 516). After exhaustive testing, Dr. Gates

16  opined that Plaintiff did not have BPPV or any other known inner ear disorder; that she was unable to

17  work because of a possible conversion reaction or some other psychopathology; and that it was clear she

18  needed psychotherapy (Tr. 397, 517). Dr. Gates made a psychiatric referral for a possible conversion

19  disorder (Tr. 341, 397, 516-517).

20       During this period of time, Dr. Epley noted that "[a]t this point, the diagnosis of Vestibular

21  Lithiasis is most likely, however, her symptoms and responses to maneuvers has (sic) been inconsistent"

22  (Tr. 234), and in November 2001, Dr. Epley reported that Plaintiff had been seen numerous times "with

23  minimal findings and only fair success at treatment" (Tr. 210). He discussed the possible need for other

24  alternative treatment (Tr. 207).  However, by March 2002, Dr. Epley was convinced that Plaintiff's

25  symptoms were being caused by a severe vestibular lithiasis (Tr. 608).

26       Plaintiff's primary care physician, Dr. Miller noted the conflict of opinions in his notes dated April

27  18, 2001.  Dr. Miller stated the Dr. Gates "thought is was all psychological", while Dr. Epley, a vestibular

28  expert who had developed treatment and diagnostic techniques for the ailment, was continuing with

1  treating Plaintiff's physical vestibular impairment (Tr. 439).

2       On In March 2003, Plaintiff was evaluated by Dr. Andersen, a psychiatrist (Tr. 392-399, 512-518).

3  Dr. Andersen reported that Plaintiff demonstrated a very sophisticated knowledge of medical terminology

4  (Tr. 392, 512). She reviewed reports from Plaintiff's physicians as well as her physical therapist (Tr. 396,

5  516). Her overall impression was that there was a great deal of question as to Plaintiff's diagnosis and that

6  it was "not entirely clear" to Dr. Andersen "that a specific diagnosis has actually been made" (Tr. 392, 397,

7  512, 516). She noted that Dr. Gates stated that she did not have the classic findings of BPPV and had

8  normal test results (Tr. 397, 516). During the mental status examination, Dr. Andersen observed no

9  problems which would suggest balance issues during the interview, nor any problems standing up from her

10  chair or walking down the hall to and from her office (Tr. 397, 517).

11       Dr. Andersen observed no abnormal eye movement when she spoke with Plaintiff at a fairly

12  close distance (Tr. 398, 517). She noted a less than normal amount of animation in the discussion and a

13  passive demeanor without "any intense expression of emotion – sadness, anger, frustration, apprehension

14  about the future, etc." (Tr. 398, 517). Dr. Andersen diagnosed a ruleout conversion disorder noting that

15  "[Plaintiff's] caregivers have seemed to be perplexed as to what specifically is going on with her" (Tr. 398,

16  517). Notable to Dr. Andersen was the lack of any "psychological component of grief, sadness, frustration,

17  anger, etc.," that she has typically seen in hundreds of people who had to apply for disability because of a

18  physical illness (Tr. 398, 518). Dr. Andersen could not speculate on "what the psychodynamic

19  underpinnings of a possible conversion disorder might be" based on the interview, but it would need to be

20  sorted out in ongoing therapy (Tr. 398-399, 518). "Certainly at the very least, she currently experiences

21  herself as being significantly disabled to the point where she cannot do any activities such as housecleaning,

22  reading, working on the computer, etc. for any period of time without getting dizzy and nauseated" (Tr.

23  399, 518). She further opined that, "[c]learly, if she were to be in a work situation and these symptoms

24  were to show up, it would be impossible for her to function consistently and reliably in any type of job

25  setting" (Tr. 399, 518).

26       The medical evidence noted above, which was relied upon by the ALJ,  properly supports the

27  ALJ's finding of a severe psychological impairment.  The ALJ additionally relied on the testimony of the

28  medical experts, Dr. Yarington and Dr. Asher, at the hearing to support his decision.  Dr. Yarington

opined that Plaintiff's symptoms did not match the generally described and accepted symptoms for this disease; the treatment did not obtain results that usually result; and that the disability and the symptoms far outweighed the objective findings (Tr. 634). He further stated that the long-term symptoms, as opposed to sudden attacks, the headaches, the difficulty with vision, the nausea and other symptoms were not typical of this disorder (Tr. 634). The ALJ also relied on the testimony of Dr. Asher, who testified that Dr. Epley's opinion that Plaintiff had a problem which was unusual, indeed perhaps unique in its symptoms and in its lack of response to treatment could also be interpreted as "it may not be real" (Tr. 638). Dr. Asher opined "that there may be somatoform overlay in all of this" (Tr. 638).

While Plaintiff argues the ALJ should have interpreted the medical evidence differently, the undersigned finds the ALJ properly considered the medical evidence and made an interpretation that is supported by substantial evidence in the record.

Furthermore, Plaintiff's arguments that her physical impairment(s) meet or equal the requirements of Listing 2.00 and 2.07 are also without merit. For instance, Section 2.07, entitled, "Disturbance of labyrinthine-vestibular function" requires satisfaction of two components: (a) a disturbed vestibular labyrinth demonstrated by caloric or other vestibular tests, and (b) hearing loss established by audiometry.

Significantly, Plaintiff admits that her condition does not meet the latter component – any hearing loss. Plaintiff argues the definition of the listing is out of date with current medical knowledge of vestibular impairments. Plaintiff asks that the court recognize the need for the Listings to be updated to reflect the current medical knowledge. The undersigned is not persuaded by Plaintiff's arguments. The ALJ properly concluded that Plaintiff's physical impairments do not meet or equal any impairment in Appendix 1, Subpart P of 20 C.F.R. § 404.

**B.** **THE ALJ PROPERLY DETERMINED PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY**

If the ALJ cannot determine whether a claimant is disabled based on a claimant's current work activity or on medical facts alone, and a claimant has a severe impairment(s), a review is made of the claimant's residual functional capacity ("RFC") and the physical and mental demands of the work a claimant did in the past. 20 C.F.R. § 404.1520(e).

Here, the ALJ concluded that Plaintiff retained the ability to work at the medium level of exertion (Tr. 16, 17, 18, Findings 6 and 8). Plaintiff's argument that the ALJ improperly assessed her RFC is

premised on her assertion that the ALJ improperly considered the medical evidence.  Specifically, Plaintiff argues the ALJ improperly interjected a mental component into her impairments and the ALJ failed to find a disability solely based on her physical impairments.

As discussed above, the undersigned found no error in the ALJ's conclusion that Plaintiff's disability was caused, in part, by a mental impairment.  The opinions of both a psychologist and a psychiatrist, Dr. Anderson and Dr. Asher, each support the ALJ's findings.  Accordingly, Plaintiff's argument that the ALJ's RFC finding is not persuasive.  The ALJ's RFC finding is properly supported by substantial evidence in the record.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court should affirm the Administration's final decision. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **July 16, 2007**, as noted in the caption.

DATED this 25st day of June, 2007.

*/s/ J. Kelley Arnold*
J. Kelley Arnold
U.S. Magistrate Judge